Edward R. Nelson III (*Admitted Pro Hac Vice*)
Texas Bar No. 00797142
Ryan P. Griffin (*Admitted Pro Hac Vice*)
Texas Bar No. 24053687
Christopher G. Granaghan (*Admitted Pro Hac Vice*)
Texas Bar No. 24078585
ed@nbafirm.com
ryan@nbafirm.com
chris@nbafirm.com
NELSON BUMGARDNER ALBRITTON P.C.
3131 West Seventh Street, Suite 300
Fort Worth, Texas 76107
Telephone: (817) 377-9111
Facsimile: (817) 377-3485

Christopher D. Banys  (SBN 230038)
Richard C. Lin  (SBN 209233)
Jennifer L. Gilbert  (SBN 255820)
cdb@banyspc.com
rcl@banyspc.com
jlg@banyspc.com
BANYS, P.C.
1030 Duane Avenue
Santa Clara, CA 95054
Telephone: (650) 308-8505
Facsimile: (650) 353-2202

Attorneys for Plaintiff
FIRSTFACE CO., LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FIRSTFACE CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | CASE NO. 3:18-cv-02245-JD <br><br> **PLAINTIFF FIRSTFACE CO., LTD.'S MEMORANDUM IN OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFF FIRSTFACE CO., LTD.'S COMPLAINT** <br><br> Date: August 30, 2018 <br> Time: 10:00am <br> Courtroom: 11 <br> Before: Hon. James Donato |

**TABLE OF CONTENTS**

I.   INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ........................1
II.  FACTUAL BACKGROUND ................................................................................................1
III. LEGAL STANDARD..........................................................................................................4
IV.  ARGUMENT.......................................................................................................................5
     A.  Firstface's Complaint adequately pleads direct infringement. ...............................5
     B.  Firstface's Complaint adequately pleads induced infringement.............................7
     C.  Firstface's Complaint adequately pleads contributory infringement.....................8
     D.  Firstface's Complaint adequately pleads willful infringement of the '557 patent.11
V.   CONCLUSION..................................................................................................................13

# TABLE OF AUTHORITIES

**Cases:**

*Anza Tech, Inc. v. D-Link Systems*
　　Case No. 3:16-cv-01263-BEN-AGS, 2016 U.S. Dist. LEXIS 154378 (S.D. Cal. Nov. 4,
　　2016) .................................................................................................................................. 6, 7

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009) ................................................................................................................ 4

*Atlas IP LLC v. Pacific Gas & Electric Co.*,
　　No. 15-cv-05469-EDL, 2016 U.S. Dist. LEXIS 60211 (N.D. Cal. Mar. 9, 2016) ............. 6

*Bender v. LG Elec.*,
　　No. C 09-02114, 2010 U.S. Dist. LEXIS 33075 (N.D. Cal. Mar. 11, 2010) ...................... 6

*Bio-Rad-Labs. Inc. v. Thermo Fisher Sci. Inc.*,
　　267 F. Supp. 3d 499 (D. Del. 2017) ..................................................................................... 12

*CAP Co., Ltd. v. McAfee, Inc.*,
　　Case No. 14-cv-05068-JD, 2015 U.S. Dist. LEXIS 83522 (N.D. Cal.
　　June 26, 2015) ............................................................................................................. 8, 10, 12

*DermaFocus LLC v. Ulthera, Inc.*,
　　201 F. Supp. 3d 465 (D. Del. 2016) ..................................................................................... 11

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
　　888 F.3d 1256 (Fed. Cir. 2018) .......................................................................................... 4, 5

*Erickson v. Pardus*,
　　551 U.S. 89 (2007) ................................................................................................................... 4

*Finjan, Inc. v. Cisco Sys.*,
　　Case No. 17-cv-00072-BLF, 2017 U.S. Dist. LEXIS 87657 (N.D. Cal. June 7, 2017) ... 11

*Gibson v. City of Chi.*,
　　910 F.2d 1510 (7th Cir. 1990) ................................................................................................ 4

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
　　136 S. Ct. 1923 (2016) ..................................................................................................... 11, 12

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
　　714 F.3d 1277 (Fed. Cir. 2013) ............................................................................................... 1

*Longitude Licensing v. Apple Inc.*,
    No. C-14-04275-EDL, 2015 U.S. Dist. LEXIS 32066 (N.D. Cal. Mar. 13, 2015) .......... 11

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018) ................................................................................ 1, 4

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*,
    No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199 (E.D. Tex. July 27, 2012) .................... 7

*Ricoh Co. v. Quanta Computer Inc.*,
    550 F.3d 1325 (Fed. Cir. 2008) ....................................................................................... 9

*Skinner v. Switzer*,
    562 U.S. 521 (2011) ........................................................................................................ 4

*U.S. Ethernet Innovations, LLC v. Netgear, Inc.*,
    Case No. 13-cv-2262 CW, 2013 U.S. Dist. LEXIS 113531 (N.D. Cal. Aug. 12, 2013) .. 10

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
    837 F.3d 1358 (Fed. Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 2129 (2018) ..... 11, 12

**Rules:**

FED. R. CIV. P. 8(d)(3) ........................................................................................................ 10

FED. R. CIV. P. 12(b)(6) ....................................................................................................... 4

## I. INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

Apple's motion to dismiss should be denied. The motion portrays Firstface's Complaint as nothing more than barebones factual allegations and legal conclusions. The allegations are far more detailed than that. Firstface has alleged that Apple directly infringes identified claims of identified patents via identified products, and has provided a description of how those products meet the limitations of the claims. Firstface has also alleged that Apple induces infringement by identifying how Apple obtained knowledge of the asserted patents, how it encourages its customers to use the accused products in an infringing manner, and how Apple knows that such conduct by its customers is infringing. Firstface has further alleged exactly what Apple sells that contributes to infringement by its customers, has explained how the components lack substantial non-infringing uses, and has alleged that Apple knows that the products are especially made or adapted for infringement. Finally, Firstface has alleged that Apple willfully infringes U.S. Patent No. 8,831,557 because it knew of the patent three years before Firstface filed suit and reviewed the claims of the '557 patent, yet continued to make and sell infringing products. These allegations are more than sufficient to put Apple on notice of the basis of Firstface's claims, which is all that is required. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)).

## II. FACTUAL BACKGROUND

Firstface is the owner of several patents covering innovative ways of improving the user experience for a user of a mobile device. Three of those patents, U.S. Patent No. 8,831,557, U.S. Patent No. 9,633,373, and U.S. Patent No. 9,779,419, are asserted here. Those patents explain that, as mobile devices have proliferated, their capabilities have expanded from simple communication to include a number of other functions. *See, e.g.*, Ex. A to Complaint ('557 patent) at 1:26-33.[1] For example, while early mobile devices were largely used only as telephones, over time those devices became much more than telephones—they now have cameras, web browsers, games, word-processing applications, e-mail software, and many other functions. As developers added functions to these devices, they also added

---

[1] The three asserted patents have substantially similar specifications.

MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS   1   CASE NO: 3:18-CV-02245-JD

complexity. For example, historically, many new functions required the display of the device to be turned on before a function could be performed, requiring a user to perform multiple steps to initiate a desired function. *Id.* at 1:34-38. And many of the new functions required a new button, adding complexity to the user interface. *Id.* at 1:38-40.

The inventors of the asserted patents, including Firstface co-CEO, Jae Lark Jung, developed innovative solutions for improving user experience with these increasingly complex devices. The inventors recognized that users habitually take out and turn on the display of their devices with one specific button. *Id.* at 1:45-56. Accordingly, the inventors developed a technology for using that button, which the patents often call an activation button, to perform additional functions. *Id.* at 1:52-56. The activation button can be used, for instance, to turn on the display *and* perform a user authentication process, such as fingerprint authentication, facial authentication, or iris authentication. *Id.* at 1:62-64, 8:3-9. The function performed may differ based on how the user presses the activation button. For example, a long press of the button can turn on the display and initiate one function, while a double press can turn on the display and initiate another function. *Id.* at 4:40-5:6.

Recognizing that Apple's devices practice the technologies claimed by the asserted patents, Firstface filed suit. Firstface has alleged that Apple infringes claims 1, 8, 9, and 15 of the '557 patent. ECF 1, ¶ 10. The '557 patent is directed to using the activation button to perform a fingerprint recognition function simultaneously with turning on the display of the mobile device. *See, e.g.*, Ex. A to Complaint at Claim 1. Firstface has accordingly accused Apple mobile devices that support fingerprint authentication of directly infringing the '557 patent, and has specifically identified eighteen such devices. ECF 1, ¶ 10. Firstface has alleged that these devices infringe because they contain a "home button," which functions as an activation button that switches the display from an off state to an on state and initiates a fingerprint recognition function. ECF 1, ¶ 12.

Furthermore, Firstface has alleged that Apple indirectly infringes the '557 patent. As the Complaint explains, Apple obtained pre-suit knowledge of the '557 patent when Firstface presented Apple with an opportunity to purchase and/or license Firstface's patent portfolio, including the '557 patent. ECF 1, ¶ 14. Despite having this knowledge, Apple has provided instructional materials,

including those at a specific, identified Apple website, that teach and encourage users to use the accused products in ways that infringe. ECF 1, ¶ 16. Moreover, Firstface has alleged that Apple knows that the accused products include proprietary hardware components and software instructions, such as memory and a processor with specific programming, that perform specific, intended functions—functions that are a material part of the inventions of the '557 patent and are not staple articles of commerce suitable for substantial non-infringing uses. ECF 1, ¶¶ 17-18.

Finally, Firstface has alleged that Apple has willfully infringed the '557 patent. The Complaint alleges that, despite obtaining knowledge of the patent and reviewing the claims, Apple continued to manufacture and sell infringing products. ECF 1, ¶ 20. Accordingly, the Complaint alleges that Apple continued its infringing conduct in an egregious manner. *Id.*

Firstface's allegations with respect to the '373 and '419 patents are similar. Firstface alleges that Apple infringes claims 1-2, 4-6, and 11-14 of the '373 patent, and claims 1-4, 6-7, 10, 12-13, and 15-17 of the '419 patent. ECF 1, ¶¶ 24, 37. The '373 patent is generally directed to using the activation button to (1) turn on the display, (2) perform a first function, and (3) perform a second function when the press of the activation button is for longer than a reference time period. *See, e.g.*, Ex. B to Complaint ('373 patent) at claim 1. The first and second functions can be fingerprint authentication, camera activation, playing music, or a hands-free function. *Id.* at claim 1, certificate of correction. The '419 patent is generally directed to using the activation button to (1) turn on the display, (2) perform fingerprint authentication, and (3) when the press of the activation button is for longer than a reference time period, initiate a hands-free operation. Ex. C to Complaint ('419 patent) at claim 1. Firstface has accordingly accused Apple mobile devices that support fingerprint authentication and Siri functionality of directly infringing the '373 and '419 patents, and has specifically identified eighteen such devices. ECF 1, ¶¶ 24, 37. Firstface has explained how these devices infringe: they contain a "home button," which (1) functions as an activation button that switches the display from an off state to an on state, (2) initiates a fingerprint recognition or authentication function, and (3) activates Siri functionality, a hands-free function, when pressed for longer than a reference time period. ECF 1, ¶¶ 26, 37.

As with the '557 patent, Firstface has alleged that Apple indirectly infringes the '373 and '419 patents. The Complaint alleges that Apple obtained knowledge of the '373 and '419 patents at least via filing and service of the Complaint. ECF 1, ¶¶ 28, 41. Despite having this knowledge, Apple has provided instructional materials, including those at a specific, identified Apple website, that teach and encourage users to use the accused products in ways that infringe. ECF 1, ¶¶ 29-30, 42-43. Moreover, Firstface has alleged that Apple knows that the accused products include proprietary hardware components and software instructions, such as memory and a processor with specific programming, that perform specific, intended functions—functions that are a material part of the inventions of the '373 and '419 patents and are not staple articles of commerce suitable for substantial non-infringing uses. ECF 1, ¶¶ 31-32, 44-45.

## III.  LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) 'generally requires only a plausible "short and plain" statement of the plaintiff's claim,' showing that the plaintiff is entitled to relief." *Nalco*, 883 F.3d at 1346 (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1347 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "This plausibility standard is met when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

"'Specific facts are not necessary; the statement need only give the defendant fair notice of what the … claim is and the ground upon which it rests.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (alteration in original) (internal quotation marks omitted). "The 'purpose of a motion to dismiss is to *test the sufficiency of the complaint, not to decide its merits*.'" *Nalco*, 883 F.3d at 1350 (quoting *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990)) (emphasis in original).

## IV. ARGUMENT

Firstface's complaint adequately pleads direct infringement, induced infringement, contributory infringement, and willful infringement. Firstface identifies the asserted claims of the asserted patents, the accused products, and how these products infringe. Firstface pleads how Apple obtained knowledge of the patents, how Apple induces infringement by its customers, and what Apple provides that contributes to infringement by its customers. Finally, Firstface pleads how Apple's conduct constitutes willful infringement of the '557 patent. These allegations are sufficient. The Court should deny Apple's motion.

### A. Firstface's Complaint adequately pleads direct infringement.

Firstface's Complaint adequately pleads direct infringement of the '557, '373, and '419 patents. Firstface's allegations do far more than recite the elements of the claims and generally assert that Apple infringes them, as Apple contends. Firstface instead has identified specific claims of each specific patent, has listed the accused products for each patent, and has described how each accused product meets the limitations of the claims. Not only do these allegations exceed the requirements of the now-abrogated Form 18, they exceed what the Federal Circuit has held is sufficient to plead direct infringement.

In *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, one of the few Federal Circuit cases addressing pleading standards after the abrogation of Form 18, the Federal Circuit addressed a complaint that "specifically identified" the accused products, alleged that the products met every element of at least one claim of the asserted patent, and attached photographs of the accused products. 888 F.3d 1256, 1258 (Fed. Cir. 2018). The court held that these allegations were sufficient to provide the defendant "fair notice of infringement of the asserted patents." *Id.* at 1259.

The allegations here are more fulsome than the allegations in *Disc Disease Solutions*. While Firstface has not included photographs of the accused products, it has identified each accused product by name. ECF 1, ¶¶ 10, 24, 37. And Firstface has done far more than simply allege that the products meet every element of at least one claim of each patent. It has identified each asserted claim and has alleged how each product infringes the asserted claims. ECF 1, ¶¶ 10, 12, 24, 26, 37, 39. And, contrary to Apple's argument, Firstface has not merely parroted claim language. It has identified the specific

components and functionality of the accused products that meet the limitations of the claims. ECF 1, ¶¶ 12, 26, 39. For example, Firstface has alleged that the "home button" of the accused products is the claimed "activation button." ECF 1, ¶ 12. And it has alleged that each accused product performs fingerprint authentication and that each accused product, upon a long-press of the home button, performs a Siri function, which is the claimed "hands-free operation." ECF 1, ¶¶ 26, 39. These allegations adequately apprise Apple of the basis for Firstface's claims.

None of the cases cited by Apple support dismissal. In *Atlas IP LLC v. Pacific Gas & Electric Co.*, the court dismissed direct infringement allegations that "describe[d] the operations of the accused products, but [did] not specifically link this description to [the asserted claim]." No. 15-cv-05469-EDL, 2016 U.S. Dist. LEXIS 60211, at *2 (N.D. Cal. Mar. 9, 2016). The complaint "recite[d] only some of the elements of the sole asserted claim, and provide[d] only a threadbare description of the alleged abilities of the accused device." *Id.* at *8. Moreover, the complaint entirely failed to address certain claim limitations. *Id.* at *13, *15. Here, however, Firstface has not only described the operation of the accused products, but identified which components and functions of those products satisfy the claim limitations. Apple has not pointed to any claim limitations that are not covered by Firstface's allegations. *Atlas IP*, therefore, does not help it.

*Anza Tech, Inc. v. D-Link Systems* actually supports *denial* of Apple's motion. There, the Southern District of California stated that "[s]ufficient allegations [of direct infringement] would include, at a minimum, a brief description of what the patent at issue does, and an allegation that certain named and specifically identified products or product components also do what the patent does, thereby raising a plausible claim that the named products are infringing." Case No. 3:16-cv-01263-BEN-AGS, 2016 U.S. Dist. LEXIS 154378, at *11-*12 (S.D. Cal. Nov. 4, 2016) (quoting *Bender v. LG Elec.*, No. C 09-02114, 2010 U.S. Dist. LEXIS 33075, at *6 (N.D. Cal. Mar. 11, 2010)) (alterations in original). The court dismissed the complaint because it alleged that certain hardware chips made by a process infringed the asserted patents, but only identified the chips by "general, nonspecific category" instead of "by name or product number." *Id.* at *15. The allegations here actually meet the standard set out in *Anza*. The allegations identify the patents, identify the products, and identify what the products do and how they

infringe the claims. As Apple notes, the court in *Anza* recognized that another court has held that some nebulous, less tangible inventions may require a higher degree of specificity to provide proper notice to the defendant.[2] *Id.* (quoting *Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 U.S. Dist. LEXIS 114199, at *4 (E.D. Tex. July 27, 2012)). But, as noted above, Firstface has been quite specific, and the technology here is not complicated. The allegations therefore provide Apple with sufficient notice of Firstface's infringement claims.

### B. Firstface's Complaint adequately pleads induced infringement.

Apple's argument that Firstface fails to adequately allege specific intent to induce infringement and knowledge that the induced acts constitute patent infringement ignores the full scope of Firstface's allegations.[3] Apple contends that Firstface's allegations regarding intent and knowledge are limited to a passing reference to instructional materials and a statement that Apple knows that its actions have induced infringement. ECF 36 at 7. But Firstface's allegations are much more fulsome than that. For example, Firstface alleges the following with respect to the '557 patent:

> 15. Despite having knowledge of the '557 patent, Apple has specifically intended, and continues to specifically intend, for persons who acquire and use the Accused Products, including its customers, to use such devices in a manner that infringes the '557 patent. This is evident when Apple encourages and instructs customers and other end users in the use and operation of the Accused Products, including use of the activation button to turn on the display and unlock the device using fingerprint authentication.
>
> 16. In particular, despite having knowledge of the '557 patent, Apple has provided, and continues to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available via https://support.apple.com, for instance) that specifically teach and encourage customers and other end users to use the Accused Products in an infringing manner. By providing such instructions, Apple knows (and has known), or should know (and should have

---

[2] The court in *Anza* did not actually rely on this principle in its holding. It instead quoted this principle in a parenthetical to a citation supporting the proposition that accused products must be identified with "at least minimal specificity." *Anza*, 2016 U.S. Dist. LEXIS 154378, at *12. Firstface has identified the infringing products with far more than "minimal specificity."

[3] Apple also argues that Firstface's induced-infringement allegations are insufficient because Firstface failed to adequately plead direct infringement. As discussed above, Firstface adequately pleaded direct infringement. *See supra* section IV.A. Firstface has also pleaded that Apple's customers and other end users directly infringe. ECF 1, ¶¶ 13, 27, 40. Firstface has therefore adequately pleaded underlying direct infringement to support an induced-infringement claim.

known), that its actions have actively induced, and continue to actively induce, infringement.

ECF 1, ¶¶ 15-16.  Firstface's Complaint has similar allegations for the '373 and '419 patents.  ECF 1, ¶¶ 29-30, 42-43.

These allegations are far from the passing references to instructional materials that the Court found insufficient in *CAP Co., Ltd. v. McAfee, Inc.*, Case No. 14-cv-05068-JD, 2015 U.S. Dist. LEXIS 83522 (N.D. Cal. June 26, 2015).  There, the plaintiff merely alleged that the accused products were "sold directly to customers and used by them pursuant to [defendant's] user manuals guides, and support articles."  *Id.* at *9 (alteration in original).  The allegations did not say anything about what those materials contained.  *Id.* at *16.  The allegations here, however, explain how Apple makes its instructional materials available (online via https://support.apple.com) and what those instructions encourage its customers to do.  For example, for the '557 patent, the instructions inform the end user about "use of the activation button to turn on the display and unlock the device using fingerprint authentication."  ECF 1, ¶ 15; *see also id.*, ¶¶ 29, 42.

Nor does Firstface make barebones allegations of knowledge that the induced acts constitute infringement without any supporting facts.  With respect to the '557 patent, Firstface has pleaded that Apple knew of the patent as early as early 2015 and that it reviewed the claims.  ECF 1, ¶¶ 14, 20.  It is therefore plausible that Apple knew as of early 2015 that the actions it induced infringed the '557 patent.  Moreover, as discussed above, the Complaint alleges that Apple has knowledge of the asserted patents at least via filing and service of the Complaint and contains detailed descriptions of how the accused products infringe all three asserted patents.  *See supra* sections II, IV.A; *see also* ECF 1, ¶¶ 12, 14, 26, 28, 39, 41.  Apple therefore knows, at least since filing and service of the Complaint, that the induced acts constitute patent infringement.  *See CAP Co.*, 2015 U.S. Dist. LEXIS 83522, at *15 ("A complaint is a perfectly adequate notice to defendants for indirect infringement claims for post-filing conduct.").  The Court should accordingly deny Apple's motion to dismiss Firstface's induced-infringement claims.

C.     **Firstface's Complaint adequately pleads contributory infringement.**

Apple's argument that Firstface fails to adequately allege a lack of substantial noninfringing use and knowledge for contributory infringement again ignores the full scope of Firstface's allegations.

Firstface's allegations are not merely threadbare recitals of the elements supported by conclusory statements.[4]  With respect to the '557 patent, Firstface alleges as follows:

> 17. Additionally, Apple knows, and has known, that the Accused Products include proprietary hardware components and software instructions that work in concert to perform specific, intended functions.  Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the '557 patent and are not staple articles of commerce suitable for substantial non-infringing uses.
>
> 18. Specifically, each Accused Product contains memory and a processor that are specifically programmed and/or configured to implement the functionality described in paragraph 12, which infringes the '557 patent.  Apple is, thus, liable for contributory infringement.

ECF 1, ¶¶ 17-18.  The allegations with respect to the '373 and '419 patents are similar.  ECF 1, ¶¶ 31-32, 44-45.

These allegations plausibly plead that the components sold by Apple are not staple article of commerce suitable for substantial non-infringing use.  Firstface pleads that the hardware provided by Apple, which includes memory and a processor, are *specifically programed and/or configured* to perform functions, described in paragraphs 12, 26, 39, that infringe the asserted patents.  ECF 1, ¶¶ 17-18, 31-32, 44-45.  As these components are specifically designed to perform infringing functions, it is plausible that they are not staple articles of commerce suitable for substantial non-infringing uses.[5]  This is a sufficient basis for a finding of contributory infringement.  *See Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1340 (Fed. Cir. 2008) (remanding to district court to determine whether product contained hardware or software components with no substantial noninfringing use other than to practice claimed methods).

---

[4] As it did with induced infringement, Apple also argues that Firstface's contributory-infringement allegations are insufficient because Firstface failed to adequately plead direct infringement.  As discussed above, Firstface adequately pleaded direct infringement and that Apple's customers and end users directly infringe.  *See supra* section IV.A; ECF 1, ¶¶ 13, 27, 40.  Firstface has therefore adequately pleaded underlying direct infringement to support a contributory-infringement claim.

[5] Apple argues that Firstface applies an incorrect legal standard because Firstface states that the alleged infringing *combinations* have no substantial non-infringing uses, while a contributory-infringement claim requires that the accused *components* have no substantial non-infringing uses.  Firstface does not apply the incorrect legal standard.  As the Complaint alleges, the components that have no substantial non-infringing uses are the hardware components with their software instructions.  ECF 1, ¶¶ 17-18, 31-32, 44-45.

Moreover, as with induced infringement, Firstface's Complaint alleges facts that make it plausible that Apple knows that the combination for which its components were especially made was both patented and infringing. Again, Firstface pleaded that Apple knew of the '557 patent in early 2015 and that it reviewed the claims. It is accordingly plausible that Apple knew that the hardware and software in the accused products were especially made or adapted for infringing the '557 patent since that time. And, as discussed above, the Complaint alleges knowledge of all three patents at least via filing and service of the Complaint and explains how the accused products infringe all three patents. *See supra* sections II, V.A; *see also* ECF 1, ¶¶ 12, 14, 26, 28, 39, 41. It is therefore plausible that Apple has known, at least since filing and service of the Complaint, that the hardware and software in the accused products were especially made or adapted for infringing the asserted patents. *See CAP Co.*, 2015 U.S. Dist. LEXIS 83522, at *15 ("A complaint is a perfectly adequate notice to defendants for indirect infringement claims for post-filing conduct.").

Apple implies that the Court should also dismiss Firstface's contributory-infringement claims because the allegation that Apple provides instructional material that teach and encourage its customers to use the accused products in an infringing manner, which supports Firstface's induced-infringement claims, is inconsistent with the allegation that the components have no substantial non-infringing uses, which supports Firstface's contributory-infringement claims. ECF 36 at 8-9 (citing *U.S. Ethernet Innovations, LLC v. Netgear, Inc.*, Case No. 13-cv-2262 CW, 2013 U.S. Dist. LEXIS 113531, at *8 (N.D. Cal. Aug. 12, 2013). As an initial matter, even if Firstface's induced-infringement claims are inconsistent with Firstface's contributory-infringement claims, the Federal Rules of Civil Procedure explicitly allow a party to state inconsistent claims. FED. R. CIV. P. 8(d)(3). But Firstface's allegations are not inconsistent. In *U.S. Ethernet Innovations*, which Apple relies on, the plaintiff pleaded that "the accused products 'embody the patented invention' and that customers *who operate Netgear's products in accordance with its instructions* directly infringe on the patents-in-suit." *U.S. Ethernet Innovations*, 2013 U.S. Dist. LEXIS at *8 (emphasis added). Firstface, however, has not merely alleged that a user that follows Apple's instructions infringes the asserted patents—it has alleged that the hardware and software components supplied by Apple are specifically programmed or configured to perform actions that

infringe the asserted patents. The Court therefore should not dismiss Firstface's contributory infringement claims on this basis.

### D. Firstface's Complaint adequately pleads willful infringement of the '557 patent.

Firstface adequately alleges that Apple has willfully infringed the '557 patent. Firstface has pleaded that Apple had knowledge of the '557 patent at least since early 2015, three years before suit was filed, and that Apple reviewed the claims of the '557 patent. Firstface has also pleaded that, despite knowing of the patent and its scope for at least three years, Apple continued to infringe. These allegations are sufficient to allege willful infringement. The Court should therefore deny Apple's motion to dismiss Firstface's willful infringement allegations.

Apple's argument that Firstface has not adequately pleaded pre-suit knowledge of the '557 patent is wrong. As an initial matter, Firstface does not agree that pre-suit knowledge is required to show willful infringement after *Halo*. *See DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 473 (D. Del. 2016) (allowing a willful-infringement claim to survive a motion to dismiss based on knowledge of patent via complaint). But putting that issue aside, Firstface has alleged pre-suit knowledge: "Apple learned of the '557 patent in early 2015 when Firstface presented Apple with an opportunity to purchase and/or license Firstface's patent portfolio, *including the '557 patent*." ECF 1, ¶ 14 (emphasis added). This is not a mere allegation of general knowledge of Firstface's patent portfolio, as in the cases Apple relies on. *See Finjan , Inc. v. Cisco Sys.*, Case No. 17-cv-00072-BLF, 2017 U.S. Dist. LEXIS 87657, at *12-*13 (N.D. Cal. June 7, 2017); *Longitude Licensing v. Apple Inc.*, No. C-14-04275-EDL, 2015 U.S. Dist. LEXIS 32066, at *6-*8 (N.D. Cal. Mar. 13, 2015). While Firstface alleges that it presented Apple with an opportunity to purchase or license its patent portfolio, Firstface specifically alleges that Apple learned of the '557 patent at that time.

Apple's argument that Firstface fails to allege egregious conduct to support enhanced damages also fails. Firstface is not required to plead that the circumstances of this case qualify as egregious conduct, and the argument to the contrary misunderstands *Halo*.[6] In *WesternGeco L.L.C. v. ION*

---

[6] Firstface recognizes that this District has required plaintiffs to plead facts rising to the level of egregious conduct. As explained above, Firstface submits that those holdings are incorrect.

1   *Geophysical Corp.*, the Federal Circuit explained that *Halo* only rejected the "strict requirement that a
2   patentee prove the *objective* unreasonableness of an infringer's defenses." 837 F.3d 1358, 1362 (Fed.
3   Cir. 2016) (emphasis added), *rev'd on other grounds*, 138 S. Ct. 2129 (2018). It did not "disturb the
4   substantive standard for the second prong of *Seagate*, subjective willfulness," which requires "proof that
5   the defendant acted despite a risk of infringement that was 'either known or so obvious that it should
6   have been known to the accused infringer.'" *Id.* (quoting *Halo*, 136 S. Ct. at 1930). Whether conduct
7   rises to the level of egregiousness sufficient to enhance damages is an issue that the Court considers *after*
8   a finding of subjective willfulness. *See id.* at 1363-64 (directing the district court to first consider
9   willfulness and then, only if the jury's verdict is sustained, to consider whether the infringement
10  constituted an egregious case warranting enhanced damages); *see also Bio-Rad-Labs. Inc. v. Thermo
11  Fisher Sci. Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017) ("At the pleading stage, it is not necessary to
12  show that the case is egregious.") (citing *Halo*, 136 S. Ct. 1923, 1934 (2016)).

13      But even if Firstface were required to plead facts rising to the level of egregiousness, Firstface has
14  done so. Firstface alleged that Apple learned of the '557 patent three years before filing suit, reviewed
15  the claims, yet continued to manufacture and sell infringing products. These facts make it plausible that
16  Apple knew of the '557 patent, knew of its scope, knew of its potential application to Apple's products,
17  yet continued to manufacture and sell infringing products. The allegations thus support the conclusion
18  that Apple engaged in conduct that was "willful, wanton, malicious, bad-faith, deliberate, consciously
19  wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo*, 136 S. Ct. at 1932.

20      Finally, even if the Court determines that Firstface has not adequately pleaded willful
21  infringement, the Court should reject Apple's request that the Court dismiss those claims with prejudice.
22  Firstface is willing to add additional allegations to its Complaint regarding how Apple obtained
23  knowledge of the '557 patent and its knowledge about the scope of the claims. These allegations bear on
24  both Apple's knowledge of the '557 patent and Apple's state of mind as it continued to infringe. This is
25  not a case like *CAP Co.* in which it was clear that the plaintiff could not allege pre-suit knowledge and
26  thus, under the prevailing law at the time, could not adequately allege willful infringement. *CAP Co.*,
27  2015 U.S. Dist. LEXIS 83522, at *7-*8. Firstface is willing to make additional allegations that go to the
28

heart of what Apple now complains about. The Court should therefore allow Firstface leave to amend, if necessary.

## V. CONCLUSION

Apple's motion ignores Firstface's detailed allegations in its Complaint. For each asserted patent, Firstface has identified the asserted claims and the accused products, and has described how those products meet the claim limitations. Firstface has also alleged that Apple makes instructional materials available to its customers and has specifically identified how those materials instruct and encourage Apple's customers to infringe the asserted patents. Firstface has further identified specific components that Apple makes available to its customers that are specifically programmed or configured to infringe the asserted patents. Finally, Firstface has alleged that Apple obtained pre-suit knowledge of the '557 patent over three years ago, reviewed the claims, yet continued to manufacture and sell infringing products. These allegations are sufficient to state a claim of direct infringement, induced infringement, and contributory infringement of all asserted patents, and willful infringement of the '557 patent. The Court should deny Apple's motion to dismiss.

Dated: August 7, 2018                          Respectfully submitted,

/s/ Edward R. Nelson III

Edward R. Nelson III (*Admitted Pro Hac Vice*)
Texas Bar No. 00797142
Ryan P. Griffin (*Admitted Pro Hac Vice*)
Texas Bar No. 24053687
Christopher G. Granaghan (*Admitted Pro Hac Vice*)
Texas Bar No. 24078585
ed@nbafirm.com
ryan@nbafirm.com
chris@nbafirm.com
NELSON BUMGARDNER ALBRITTON P.C.
3131 West Seventh Street, Suite 300
Fort Worth, Texas 76107
Telephone: (817) 377-9111
Facsimile: (817) 377-3485

Christopher D. Banys  (SBN 230038)
Richard C. Lin  (SBN 209233)
Jennifer L. Gilbert  (SBN 255820)
cdb@banyspc.com

1
2
3
4
5

                              *rcl@banyspc.com*
                              *jlg@banyspc.com*
                              BANYS, P.C.
                              1030 Duane Avenue
                              Santa Clara, CA 95054
                              Telephone: (650) 308-8505
                              Facsimile: (650) 353-2202

***Attorneys for Plaintiff FIRSTFACE CO., LTD***

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28