STEFANI E. SHANBERG, Bar No. 206717
sshanberg@mofo.com
NATHAN B. SABRI, Bar No. 252216
nsabri@mofo.com
BARBARA N. BARATH, Bar No. 268146
bbarath@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Defendant
APPLE INC.

MARK D. FOWLER, Bar No. 124235
mark.fowler@dlapiper.com
AARON WAINSCOAT, Bar No. 218339
aaron.wainscoat@dlapiper.com
CLAYTON THOMPSON, Bar No. 291331
clayton.thompson@dlapiper.com
ERIK R. FUEHRER, Bar No. 252578
erik.fuehrer@dlapiper.com
JONATHAN HICKS, Bar No. 274634
jonathan.hicks@dlapiper.com
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, California  94303-2214
Telephone:  650.833.2000
Facsimile:  650.833.2001

Attorneys for Defendants SAMSUNG
ELECTRONICS CO., LTD. and SAMSUNG
ELECTRONICS AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FIRSTFACE CO., LTD.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>　　　　　　Defendants | Case No. 3:18-cv-02243-JD<br><br>**DEFENDANTS' JOINT<br>RESPONSIVE CLAIM<br>CONSTRUCTION BRIEF**<br><br>Date:  May 2, 2019<br>Time:  11:00 am<br>Courtroom:  11<br>Judge:  Hon. James Donato |
| FIRSTFACE CO., LTD.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>APPLE INC.,<br><br>　　　　　　Defendant | Case No. 3:18-cv-02245-JD |

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND AND OVERVIEW OF THE PATENTS ............................... 2

III.   PROPER CONSTRUCTION OF THE DISPUTED TERMS ........................... 3

     A.    Activation Button Terms (Groups 1A and 1B) ........................................ 3

          1.   The intrinsic evidence requires and extrinsic evidence confirms that the button is depressible and that pressing/pressed means moving/moved. ........................................................................................ 4

          2.   The activation button function is straightforward. ....................................... 6

     B.    Display Unit Terms (Groups 2, 3, 4, and 5) ............................................. 7

          1.   Off/on state of the display terms (Groups 2 and 3) .................................. 8

              a.   "ON state" and "OFF state" refer to power states. ......................... 8

              b.   Firstface's reference to "the device" is incorrect and confusing. ........................................................................................... 9

          2.   Inactive/active state of the display terms (Groups 3 and 5) ..................... 10

     C.    Fingerprint Recognition/Authentication Terms (Groups 6A, 6B, and 6C)........... 11

          1.   "User identification function/process by a fingerprint recognition" is limited to comparing fingerprints. ................................ 12

              a.   The "user identification function" is the comparing portion of the "user authentication process." .................................... 12

              b.   Firstface ignores the claims and the specification. ........................ 15

               c.   "User identification function" has no ordinary meaning. ............. 15

          2.   "Fingerprint recognition" and "fingerprint authentication" are limited to the comparing and authenticating functions. ........................... 16

     D.    "Simultaneously" (Group 7) ...................................................................... 17

          1.   Applicants did not express a clear intent to redefine "simultaneously." ....................................................................................... 18

          2.   Firstface's added negative limitations are redundant and ambiguous. ........................................................................................... 20

     E.    Long Press Terms (Groups 8 and 9) ........................................................ 21

IV.   CONCLUSION ................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Properties Co. v. Avery Dennison Corp.*,
   350 F.3d 1365 (Fed. Cir. 2004)................................................................18

*August Tech. Corp. v. Camtek, Ltd.*,
   655 F.3d 1278 (Fed. Cir. 2011)................................................................22

*Azure Networks, LLC v. CSR PLC*,
   771 F.3d 1336 (Fed. Cir. 2014), *cert. granted, judgment vacated on other*
   *grounds*, 135 S. Ct. 1846 (2015).............................................................19

*Bicon, Inc. v. Straumann Co.*,
   441 F.3d 945 (Fed. Cir. 2006)................................................................22

*Biogen, Inc. v. Berlex Labs., Inc.*,
   318 F.3d 1132 (Fed. Cir. 2003)................................................................23

*CSP Techs., Inc. v. Sud-Chemie AG*,
   No. 4:11-CV-00029-RLY, 2013 WL 2421943 (S.D. Ind. June 3, 2013), *aff'd*,
   643 F. App'x 953 (Fed. Cir. 2016) ....................................................18, 19

*Halliburton Energy Servs., Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008)................................................................7

*In re Downing*,
   No. 2018-1795, 2018 WL 6436437 (Fed. Cir. Dec. 7, 2018) ....................6, 16, 23

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   481 F.3d 1371 (Fed. Cir. 2007)................................................................6

*Linear Tech. Corp. v. Impala Linear Corp.*,
   379 F.3d 1311 (Fed. Cir. 2004)................................................................17

*Lucent Techs., Inc. v. Gateway, Inc.*,
   525 F.3d 1200 (Fed. Cir. 2008)................................................................15

*O.I. Corp. v. Tekmar Co.*,
   115 F.3d 1576 (Fed. Cir. 1997)................................................................23

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)................................................................16

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003)................................................................17

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)..................................................................................6

*Rambus Inc. v. Hynix Semiconductor Inc.*,
   No. C-05-00334 RMW, 2008 WL 2955125 (N.D. Cal. July 25, 2008)...................20

*Thorner v. Sony Computer Entm't America LLC*,
   669 F.3d 1362 (Fed. Cir. 2012)................................................................................18

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*,
   782 F.3d 671 (Fed. Cir. 2015)..................................................................................19

*Wang Labs., Inc. v. Am. Online, Inc.*,
   197 F.3d 1377 (Fed. Cir. 1999)................................................................................23

1    **I.      INTRODUCTION**

2            The asserted patents relate to mobile communication terminals with a single button that is

3    pressed to both activate the display and perform an additional claimed function, such as user

4    identification.  The parties' claim construction disputes can be summarized as follows.

5            As to U.S. Patent No. 8,831,557 ("'557 patent"), asserted against Apple and Samsung,

6    Firstface contends that (1) the claimed "activation button" need not actually be a button, *i.e.*, a

7    depressible component; (2) the claimed "OFF state" of the display includes situations in which

8    the display still receives power, *i.e.*, is not actually off; (3) the claimed "user identification

9    function" can be defined by its plain and ordinary meaning, when it has no such meaning in the

10   art; and (4) "simultaneously" should be defined to include two redundant and unnecessary

11   negative limitations.  But the intrinsic record expressly requires that:  (1) the activation button is

12   separate from the display and, therefore, not a mere image on a display as Firstface contends it

13   could be; (2) "OFF" means off, *i.e.*, without power; (3) the "user identification function" is a

14   discrete part of the "user authentication process" defined by the specification as comparing

15   information; and (4) the simple term "simultaneously" should not be complicated with negative

16   limitations unsupported by the claims, specification, or file history.

17           As to U.S. Patent Nos. 9,633,373 ("'373 patent") and 9,779,419 ("'419 patent"), asserted

18   only against Apple, the claims require performing a second function "other than the [first]

19   function . . . when the one-time pressing is for a long time."  '419 patent: claims 1, 3, 7, 10, 12,

20   17; *see also* '373 patent at claims 1, 11 ("second function is performed when the one-time

21   pressing is for a long time").  Firstface's contention that the claims allow **both** the first and

22   second functions to be performed upon a long press is inconsistent with the claims and the

23   specification.   Disputes relating to "activation button," "inactive state," and "fingerprint

24   authentication," similar to those described as to the '557 patent, also arise in the context of the

25   '373 and '419 patents.

26           Firstface's constructions should be rejected because each one either overreaches to

27   ensnare Defendants' products (*e.g.*, "activation button") or is overly narrow to avoid prior art

28   (*e.g.*, "simultaneously").  Defendants' constructions should be adopted because they derive from

1   the claims and specification, as confirmed by technical dictionaries and expert testimony.

2   **II.     BACKGROUND AND OVERVIEW OF THE PATENTS**

3           Firstface is a "patent venture company." Ex. A.  Firstface's asserted patents explain that,

4   before Firstface filed its first patent application, "various terminals, for example, such as smart

5   phones, mobile phones, personal digital assistants (PDAs), and web pads, having not only

6   communication functions but also various other functions ha[d] come into wide use." '557 patent

7   at 1:26-29.[1]  The specification contends that prior to the invention, "to add a certain function, an

8   [additional] interface or button for performing the function [had to] be added to the terminal." *Id.*

9   at 1:38-40.  The asserted patents purport to instead connect various operations to pressing a single

10  button.  *Id*. at 1:51-56.  In this regard, the asserted patents all require pressing an "activation

11  button" "for switching the mobile communication terminal 100 from the inactive state to the

12  active state." *Id*. at 4:27-29.  Firstface suggests that the use of a single button "to perform

13  multiple functions or operations" was "innovative."  Op. Brief at 2.  But during prosecution of the

14  '373 patent, the Patent Office recognized that the prior art "teaches the claimed invention," except

15  for the '373 patent limitation requiring that "the touch screen display displays the lock screen

16  when at least one of the first and second functions is being performed."  Ex. B, '373 Patent

17  Prosecution History, Notice of Allowability, dated February 1, 2017, at 5.

18          The '557 patent further requires that a "user identification function is performed

19  simultaneously with switching from the inactive state of the display unit to the active state." *See*,

20  *e.g.*, '557 patent at claim 1.  The '373 and '419 patents instead require that, in addition to

21  activating the display, one of two predetermined operations is performed "depending upon length

22  of pressing of the activation button." '373 patent at Abstract; '419 patent at 1:21-23.  The '373

23  patent recites that each predetermined operation may be selected from the set of fingerprint

24  

_____

25  [1] Firstface contends "[t]he three asserted patents have substantially similar specifications."
    Firstface's Opening Brief (ECF No. 61) ("Op. Brief") at 2 n4.  While there are differences among
26  the specifications, none of the differences are material to the claim construction disputes
    discussed herein.  To avoid redundant citations, Defendants cite to the '557 patent and refer to the
27  "specification" in the singular, unless otherwise noted.

28

authentication, camera activation, playing music, or invoking a hands-free function.  *See, e.g.*, '373 patent at claim 1, certificate of correction.  The '419 patent requires that the first function be fingerprint authentication, while the second function can be camera activation, playing music, or invoking a hands-free function.  *See, e.g.*, '419 patent at claims 1, 3, certificate of correction.

## III.  PROPER CONSTRUCTION OF THE DISPUTED TERMS

### A.  Activation Button Terms (Groups 1A and 1B)

| Term / Phrase | Firstface's Proposal | Apple's Proposal | Samsung's Proposal |
|---|---|---|---|
| "activation button" ('557 patent: claims 1, 8, 9, 15; '373 patent: claims 1, 4, 10, 11, 12, 18; '419 patent: claims 1, 2, 3, 7, 9, 10, 16) | "button that, while the device is on, switches the display from a state in which the display is turned off to a state in which the display is turned on" | "depressible component that activates" | |
| "pressing [of] the activation button" / "activation button has been pressed" / "an activation button for pressing" / "activation button configured for pressing" ('557 patent: claims 1, 9; '373 patent: claims 1, 4, 10-12, 18; '419 patent: claims 1-3, 7, 9, 10, 16) | plain and ordinary meaning; *see* construction of "activation button" | "moving the activation button in response to pressure" / "activation button has been moved in response to pressure" / "an activation button for moving in response to pressure" / "activation button configured for moving in response to pressure"<br><br>*See* construction for "activation button" | N/A |

All asserted claims in all asserted patents recite an "activation button."  The parties' primary dispute is whether the "activation button" is, as the term is normally understood, a "depressible component," or need not be pressed at all (*e.g.*, it could be an image on a display representing a button), as Firstface contends.  All evidence supports Defendants' construction.  The specification expressly precludes an "activation button" from being part of the "display unit." '557 patent at 3:65-67 (activation button must be on "part different from that of the display unit").  The parties also dispute the appropriate language to describe the button's function.  Defendants

propose that "activation" simply means that the button "activates" and needs no further construction, while Firstface attempts to add unsupported additional requirements. Relatedly, Apple and Firstface dispute whether "pressing/pressed" means "moving/moved," as Apple contends, or needs no construction at all, as Firstface contends.

> **1.    The intrinsic evidence requires and extrinsic evidence confirms that the button is depressible and that pressing/pressed means moving/moved.**

The claims, specification, and extrinsic evidence confirm that the "button" must be a movable component and cannot be merely an image on a display. As a threshold matter, the asserted claims all recite "pressing"—not just touching—the "button," which is consistent with a construction requiring the "activation button" to be movable. *See*, *e.g.*, '557 patent at claim 1 ("pressing the activation button"); '373 patent at claim 1 ("activation button configured for pressing"); '419 patent at claim 1 (same). A person of ordinary skill would understand, in view of the claims and specification, that the "activation button" is a mechanical, movable button. Declaration of Jason Nieh in Support of Defendants' Joint Responsive Claim Construction Brief ("Nieh Decl.") ¶ 24.

The claims and specification exclude the software-based "buttons" that Firstface contends can fall within the claims. *See* Op. Brief at 9. Figure 1 shows activation button 120 (in red to the right) outside and below the display unit 110 (in blue). '557 patent at Fig. 1 (color added). The specification emphasizes that, while the display unit need not look exactly like Figure 1, "the activation button 120 is only required to be formed on a part **different from that of the display unit 110**." '557 patent at 3:65-67 (emphasis added). Indeed, claims of the '373 and '419 patents expressly require the claimed "activation button" to be "located **outside the touchscreen display**." '373 patent at claims 1, 11 (emphasis added); '419 patent claims 1, 10. Similarly, claim 2 of the '557 patent discloses an "activation button [that] internally includes a sub-display unit," such as a light-emitting diode. *See* '557 patent at claim 2; *id.* at 5:31-34. A person of ordinary skill would not add a sub-display unit to an existing display



FIG. 1

screen, and the specification fails to describe any non-mechanical button capable of hosting a sub-display unit. Nieh Decl. ¶¶ 25-26. Because the claimed "button" must be separate from the display, it cannot possibly be a "small pushbutton-like image **on** a display screen" or "graphic element **in** a dialog box," as Firstface contends. Op. Brief at 9; *see also* Nieh Decl. ¶ 25.

Other uses of the word "button" also confirm the patentee understood the term "button" to refer to a mechanical component. The specification discusses using an "ON/OFF button." *See* '557 patent at 4:17-26. The "ON/OFF button" within the asserted patents is intended to turn the terminal off from the on state and is also intended to turn it on from the off state. *See id.*; *see also* '419 patent at claim 1 (reciting "power button configured to turn on and off the terminal"). A non-mechanical "button" that is software-based or part of a display could not be used to turn on the display or the terminal as it would not be operational when it is not receiving power. Nieh Decl. ¶ 27. Because the patents require that the "activation button" be (a) "pressed," (b) separate from the display, and (c) operational when the terminal is not receiving power, a person of ordinary skill in the art would understand the claimed "activation button" to be a mechanical, movable component. *Id.* ¶ 28.

Extrinsic evidence further supports this understanding. Contemporaneous dictionaries confirm that a "button" is a "**movable** piece that is pressed to activate some function." Ex. C, *Microsoft Computer Dictionary*, at 79 (emphasis added); Ex. D, *A Dictionary of Information Technology and Computer Science*, at 31 (defining "button" as a component "that can be **depressed** to send a signal to the computer system") (emphasis added). Dictionaries also confirm that the plain and ordinary meaning of "press" is "to **move** by means of pressure." Ex. E, *Merriam-Webster's Collegiate Dictionary*, at 983 (emphasis added); *see also* Ex. F, *Concise Oxford American Dictionary*, at 699 ("**move** into a position of contact with something by exerting continuous physical force") (emphasis added). Firstface is correct that some dictionary definitions of "press" do not require movement (Op. Brief at 8), but this proves only that Firstface is incorrect that, in the context of the asserted patents, "'press' (and its derivatives) is readily understandable by a jury." Op. Brief at 7.

Furthermore, if the Court does not adopt Defendants' construction, the term "activation

1    button" would lack written description support because, as discussed above, the specification only

2    describes mechanical buttons and makes clear that the "activation button" must be separate from

3    the display.  Further, the specification discusses adding to the activation button a sub-display unit,

4    which a person of ordinary skill would not add to a non-mechanical button.  Accordingly, the

5    specification fails to describe a non-mechanical surface in sufficient detail to "reasonably

6    convey[] to those skilled in the art that the inventor had possession of the claimed subject matter

7    as of the filing date." *In re Downing*, No. 2018-1795, 2018 WL 6436437, at *5 (Fed. Cir. Dec. 7,

8    2018) (citation omitted).  The asserted claims also would not be enabled, as "one skilled in the

9    art, after reading the specification, could [not] practice the claimed invention without undue

10   experimentation." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1378-79 (Fed. Cir.

11   2007) (asserted claims covering medical injector with or without a pressure jacket were invalid

12   for lacking an enabling disclosure where the specification did not teach how to make the injector

13   without the pressure jacket and specification actually taught away from making an injector

14   without a pressure jacket).  To avoid this result and be consistent with the intrinsic evidence,

15   dictionary definitions, and a person of ordinary skill's understanding, the Court should find that

16   the claimed "activation button" must be movable.

17              **2.     The activation button function is straightforward.**

18              The parties also dispute the proper construction of the function of the "activation button."

19   Defendants propose that the activation button simply "activates" and do not believe any dispute

20   exists requiring further construction. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir.

21   2005) ("words of a claim 'are generally given their ordinary and customary meaning'") (citations

22   omitted).  This is consistent with claim language and the specification.  In contrast, Firstface's

23   construction adds unnecessary and confusing requirements, and renders the claims indefinite.

24              Firstface's request to include a requirement that the activation button "switch[] the display

25   from a state in which the display is turned off to a state in which the display is turned on" (Op.

26   Brief at 7-8) is confusing.  "OFF state" and "ON state" are disputed terms to be construed

27   themselves.  They are addressed in the context of the Display Unit Terms in Section III.B below.

28   Reading them into "activation button" does not clarify the meaning of "activation."

Firstface's proposal is further unnecessary because the claims already provide that the "activation button [is] configured to switch from . . . an OFF state of the display unit, to . . . an ON state of the display unit." '557 patent at claim 1; *see also* '373 patent at claim 1 and '419 patent at claim 1 ("activation button configured for pressing to turn on the touch screen display"). Firstface's construction also would require that activation occur "while the device is on." But the term "device" appears nowhere in the claims, and is not required by the claims. Adding "the device" to the claims would render the claims indefinite because the term would have no antecedent basis. *See Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) ("claim could be indefinite if a term does not have proper antecedent basis"). The Court should reject Firstface's invitation to read unnecessary language into the claims and should instead adopt Defendants' construction.

"Activation button" should be simply defined as a "depressible component that activates," consistent with the claims and the specification. There is no support for confusing this simple term with requirements as to the unclaimed "device" or the state of the display.

## B.    Display Unit Terms (Groups 2, 3, 4, and 5)

With respect to the "OFF state" and "ON state" of the display terms (which appear only in the '557 patent) and the "inactive state" and "active state" of the display terms (which appear in all asserted patents), the parties dispute: (a) the meaning of "off" and "on" and (b) whether the "OFF state of the display" and "inactive state of the display" terms include a requirement regarding the state of the terminal. Firstface ignores intrinsic evidence confirming that "OFF state" and "ON state" refer to power states, as Defendants' construction requires. Firstface also improperly attempts to import a definition of "inactive state," which relates to the state of the terminal rather than the display, into the "OFF state" terms relating to the state of the display.

**1. Off/on state of the display terms (Groups 2 and 3)**

| Term / Phrase | Firstface's Proposal | Apple's and Samsung's Proposal |
|---|---|---|
| "an OFF state of the display unit" ('557 patent: claims 1, 9) | "a state in which the display is turned off yet the device itself is on" | "a state in which the display unit is not receiving power" |
| "an ON state of the display unit" ('557 patent: claims 1, 9) | "a state in which the display is turned on" | "a state in which the display unit is receiving power" |

The parties dispute what it means for a display to be in "an OFF state" versus "an ON state." Firstface's construction provides no guidance as to the meaning of "OFF" or "ON," and also attempts to import unrelated limitations regarding the terminal into the "OFF state" term. This is not helpful to understanding the proper scope of the claims and ignores the intrinsic and extrinsic evidence defining the terms consistent with Defendants' constructions.

**a. "ON state" and "OFF state" refer to power states.**

During prosecution, Applicants emphasized that "ON state" and "OFF state" refer to power states. For example, Applicants argued that the prior art disclosed "switching from the OFF state of the **power** of the device to the ON state of the **power** of the device." Ex. G, '557 Patent Prosecution History, Response to Office Action, dated January 7, 2014, at 8 (emphasis added); *see also id.* at 8-9 (discussing "turning on the **power** of the device") (emphasis added). While Applicants were seeking to distinguish prior art that taught turning on the entire communication terminal, rather than just the display, Applicants also confirmed that "ON state" and "OFF state" refer to power states in the context of the display, noting that the prior art discloses that a "display screen is kept in an inactive state" (which the asserted claims define as "an OFF state of the display unit") "[i]n order to preserve a battery." *Id.* at 9. Preserving a battery relates to power state. Nieh Decl. ¶ 31.

Applicants' understanding that "OFF state" and "ON state" refer to power states is consistent with the ordinary meaning of the terms. An "OFF state" is defined as "[a] state in which no current, voltage, or other signal passes, so that a component . . . is disconnected or not otherwise operating." Ex. H, *Wiley Electrical and Electronics Engineering Dictionary*, at 524.

Similarly, persons of ordinary skill in the art would understand that, in the context of the claims and specification, the measure of "on" versus "off" relates to whether a component is receiving power.  Nieh Decl. ¶ 30.  The Court should construe "an OFF state of the display unit" as a "state in which the display unit is not receiving power" and "an ON state of the display unit" as a "state in which the display unit is receiving power."

### b.   Firstface's reference to "the device" is incorrect and confusing.

The Court should reject Firstface's attempt to read into "OFF state of the display" a requirement that "the device itself [is] on."  As a threshold matter, Firstface's apparent basis for this requirement relates to use of "inactive state" rather than "OFF state" in the specification.  Op. Brief at 12; '557 patent at 5:28-38.  The quoted language does not support reading a limitation into the "inactive state" term, as discussed below, much less into "OFF state."  Firstface's purported support is not a definition of "OFF state," and it is inapplicable to the term "OFF state."

As discussed in Section III.A.2, the word "device" is not recited in the claims, so adding a reference to "the device" as Firstface requests would also render the claims indefinite.  Because "device" is not used in the claims, Firstface may intend it to refer to the display unit.  If so, Firstface's proposal is unintelligible.  It would read "a state in which the display is turned off yet the [display] itself is on," and require the display unit to be both "off" and "on" at the same time.  To the extent Firstface intends "the device" to refer to the mobile communication terminal, Firstface's proposal is incorrect.  It would limit "off state of the display" to "a state in which the display is turned off yet the [terminal] itself is on"; therefore, it would exclude from "off state of the display" any state in which the terminal is off.  This is illogical since the display (which is part of the terminal) is necessarily off when the terminal is off.  Nieh Decl. ¶ 32.  The Court should reject Firstface's importation of extraneous language regarding "the device" (or the terminal) into the "off state of the display."

### 2.     Inactive/active state of the display terms (Groups 3 and 5)

| Term / Phrase | Firstface's Proposal | Apple's Proposal |
|---|---|---|
| "inactive state [of the display unit]" / "inactive state [of the touch screen]" / "while the touch screen display is turned off" ('557 patent: claims 1, 9; '373 patent: claims 1, 4, 11, 12; '419 patent: claims 1, 2, 10, 12, 16, 17) | "a state in which the display is turned off yet the device itself is on" | "state in which the display is not receiving power" |
| "active state [of the display unit]" ('557 patent: claims 1, 9; '373 patent: claims 11, 12; '419 patent: claims 10, 12, 13, 16, 17) | "a state in which the display is turned on" | "state in which the display is receiving power" |

Firstface and Apple agree that "'an OFF state of the display unit,' 'inactive state [of the display unit/touch screen],' and 'while the touch screen display is turned off' should be given the same construction, and 'an ON state of the display unit' and 'active state [of the display unit/touch screen]' should be given the same construction." Op. Brief at 11.  This is because the claims of the asserted patents themselves define the "inactive state" of the display unit/touch screen as "an OFF state of the display unit," and the "active state" of the display unit/touch screen as "an ON state of the display unit."  ('557 patent at claims 1, 9; *see also* '373 patent at claim 11; '419 patent at claim 10).[2]

As with "OFF state" above, the Court should reject Firstface's attempt to read into "inactive state of the display" a requirement that the "device [be] turned on."  Firstface misleadingly suggests that the specification defines "inactive state of the display" to exclude "a state in which the mobile communication terminal is completely off." Op. Brief at 11-12.  But the specification discusses exclusively the "inactive state of the mobile communication terminal" (*e.g.*, '557 patent at 6:60-61, 7:63-64, 8:63-64), never once referring to the "inactive state of the display."  Because the definition of "inactive state" upon which Firstface relies relates to the inactive state of the mobile communication **terminal**, the Court should reject Firstface's attempt

---

[2] As to the '557 patent, it may be sufficient to define the terms "OFF state" and "ON state" to provide guidance to the jury regarding the meaning of "OFF" and "ON."  Because "OFF state" and "ON state" do not appear in the '373 and '419 patents, the "inactive" and "active" state terms must also be construed to mean "not receiving power" and "receiving power," respectively, to provide consistent guidance. *See* Section III.B.1 *supra*.

to use that definition to import limitations into terms relating to the state of the **display**.  Again, as discussed in Section III.A.2, the word "device" is not in the claims, so adding it would render the claims indefinite.

The "inactive state" terms should be construed consistent with the claims and the specification as a "state in which the display is not receiving power" (*i.e.*, an OFF state of the display), while the "active state" terms should be construed as a "state in which the display is receiving power" (*i.e.*, an ON state of the display).

## C.    Fingerprint Recognition/Authentication Terms (Groups 6A, 6B, and 6C)

| Term / Phrase | Firstface's Proposal | Apple's Proposal | Samsung's Proposal |
|---|---|---|---|
| "user identification function [including] a fingerprint recognition" / "user identification process by a fingerprint recognition" ('557 patent: claims 1, 9, 15) | plain and ordinary meaning | "comparison of a detected fingerprint with a pre-stored fingerprint" | |
| "fingerprint recognition" ('557 patent: claims 1, 8, 9; '419 patent: claim 10) | plain and ordinary meaning | "process whereby a detected fingerprint is compared with a pre-stored fingerprint" | N/A |
| "fingerprint authentication" ('373 patent: claims 1, 2, 4, 5, 6, 10, 11, 13, 14, 18; '419 patent: claims 1, 2, 3, 6, 7, 9, 10, 12, 15, 17) | plain and ordinary meaning | "process whereby current user is authenticated as a true user if the two fingerprints match" | N/A |

The term "user identification function/process" appears in the asserted independent claims of the '557 patent; "fingerprint recognition" appears in the asserted independent claims of the '557 patent and claim 10 of the '419 patent; and "fingerprint authentication" appears in the asserted claims of the '373 and '419 patents.  The parties agree that the "user authentication process" includes several functions:  (1) activating a device to capture the current user's information, (2) extracting the current user's data, (3) comparing the current user's data to pre-stored information, and (4) authenticating the current user as the true user if the current user's

data matches the pre-stored information.  Op. Brief at 14; '557 patent at 7:5-7, 7:20-50.  The parties disagree, however, whether the claim terms identified above correspond to specific functions (as Defendants contend) or each include all four functions in the "user authentication process" (as Firstface apparently contends).  As detailed below, the claims and specification leave no doubt that each claim term corresponds to a specific function.

### 1.   "User identification function/process by a fingerprint recognition" is limited to comparing fingerprints.

The specification discloses that the "user identification function/process" is limited to comparing detected user information to pre-stored information, and the claims recite comparing fingerprint information in particular.  Firstface's attempt to include other functions (*e.g.*, extracting user information and authenticating the user) within the "user identification function/process," or even allow for other disclosed processes such as iris detection or face recognition, is inconsistent with the intrinsic evidence.

### a.   The "user identification function" is the comparing portion of the "user authentication process."

The '557 patent explains that the "user identification unit 420" includes three elements (*i.e.*, "a camera activation element 421, an iris detection element 422, and a user identification element 423").  These three elements together perform four functions, which the specification calls collectively the "user authentication process."  '557 patent at 7:5-7.  As Firstface explains, the specification only describes the user authentication process in terms of iris authentication:

> The camera activation element [421] **activates** the camera [function 1].
>
> The iris detection element [422] **recognizes and extracts** an iris from an eyeball of the user [function 2].
>
> And the **<u>user identification element</u>** [423] **<u>compares</u>** the iris detected by the iris detection element to pre-stored iris information of the user [function 3] and **authenticates** the user as a true user if the two irises match [function 4].

Op. Brief at 14 (emphasis added); *see also* '557 patent at 7:20-50.  The specification names "[t]he above-described operations, that is, the iris **detection function**, the **<u>user identification function</u>**, and the **user authentication function**."  *Id.* at 7:51-53 (emphasis added).  The "detection

"function" corresponds with the function performed by the "detection element" (function 2, above); the "user identification function" corresponds with comparing detected user information to pre-stored user information (function 3, above); and the "user authentication function" corresponds with authenticating the user (function 4, above).  Nieh Decl. ¶¶ 37-39.

This is demonstrated in the figure below (prepared by Defendants for illustrative purposes), which shows:

- The "camera activation element 421" activates the camera ('557 patent at 7:25-29), a function to which the patent does not give a special name;[3]

- The "detection element 422" recognizes and extracts the current user's information (*id.* at 7:30-33), which the patent calls the "detection function" (*id.* at 7:51); and

- The "user identification element 423" both (1) compares detected user information to pre-stored user information (*id.* at 7:33-35), which the patent calls the "**user identification function**" (*id.* at 7:52), and (2) authenticates the current user as a true user if the user information matches (*id.* at 7:36), which the patent calls the "user authentication function" (*id.* at 7:52).

---

[3] The "camera activation element" is not claimed.  The claimed method is fingerprint recognition/authentication using a fingerprint scanner on the activation button, instead of a camera.  Nieh Decl. ¶ 36.



The "user identification function" is one of the four functions within the "user authentication process" performed by the "user identification unit." The "user identification function" involves comparing detected and pre-stored user information. *Id.* at 7:34-35, 7:52.

The disputed terms require that the "user identification function/process" be "**by** a fingerprint recognition" ('557 at claim 9 (emphasis added)) or "**include**[] a fingerprint recognition" (*id.* at claim 1 (emphasis added)). While the '557 patent specification states that "other authentication methods" may be used (including "an authentication key matching method, a password matching method, a face recognition method, a fingerprint recognition method," *id.* at 8:3-9), the only claimed user identification function/process is done by fingerprint recognition. Firstface itself treats "user authentication function" synonymously with "fingerprint recognition" in the context of the '557 patent. *See* Op. Brief at 2 ('557 patent "is directed to using the activation button to perform a fingerprint recognition function"). Defendants' construction

correctly reflects that the user information being compared is a fingerprint.

### b.     Firstface ignores the claims and the specification.

Firstface's argument that other elements of the "user authentication process" are included in the "user identification function/process" is inconsistent with the intrinsic evidence.  Firstface erroneously conflates the claimed "user **identification** function/process" with the broader "user **authentication** process" described in the specification.  Op. Brief at 14 (arguing that "one of the functions that can be performed when a user presses an activation button is a 'user identification function' or a 'user authentication process'").  As detailed above, the broader "user **authentication** process" includes four functions, only one of which is the disputed "user **identification** function/process."

Firstface is incorrect in its attempt to broaden this term by arguing that "includes" (found only in the '557 patent claim 1) means that "fingerprint recognition . . . [is] **only part** of the claimed user identification function or process."  Op. Brief at 13 (emphasis added).  Firstface's argument rests on a mischaracterization of *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200 (Fed. Cir. 2008).  In *Lucent*, the asserted patent claimed a method for generating a pulse using an iterative process with "each successive iteration **including** the steps [1–5]." *Id.* at 1213.  Lucent argued that the word "including" "does not require that all of steps 1–5 be performed," "provided that the results of those steps are used" as a factor in calculating the pulse. *Id.* The Federal Circuit disagreed, holding the term "including" requires that "[steps 1–5] must each be performed." *Id.* at 1213-14.  *Lucent* stands for the proposition that the term "including" requires that all the disclosed methods (here, "fingerprint recognition") be performed; it does not require that other undisclosed methods be performed.  Here, everyone agrees that fingerprint recognition must be performed.

### c.     "User identification function" has no ordinary meaning.

Firstface's proposed construction of "plain and ordinary meaning" is unhelpful and inappropriate where there is a dispute as there is here.  The term "user identification function" has no plain and ordinary meaning in the art.  Nieh Decl. ¶ 33.  It is telling that Firstface offers no dictionary definition for the term.  Because the term's meaning "as understood by persons of skill

in the art is not readily apparent," and "the parties present a fundamental dispute regarding the scope of a claim term," the term is in need of construction. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360, 1362 (Fed. Cir. 2008).

If the Court does not adopt Defendants' construction, the term "user identification function" would lack written description because the '557 patent specification would provide insufficient detail to "reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *In re Downing*, 2018 WL 6436437, at *5 (citation omitted). The specification clearly and unambiguously distinguishes the "user identification function" from the "detection function" and "authentication function." *See* '557 patent at 7:52. The other two references to "user identification function" (*id.* at 7:4, 7:19) provide no further explanation as to the meaning of the term. The Court should adopt Defendants' proposed construction, which defines the "user identification function/process including/by fingerprint recognition" terms consistent with the claims and specification, *i.e.*, as (a) the comparing function within the user authentication process, as required by the specification, and (b) using fingerprint comparison, as required by the claims.

### 2. "Fingerprint recognition" and "fingerprint authentication" are limited to the comparing and authenticating functions.

Firstface does not dispute that "fingerprint recognition" and "fingerprint authentication" are limited to comparing fingerprints and to authentication of the user if fingerprints match. In fact, Firstface concedes that "fingerprint recognition (and for that matter, fingerprint authentication) are only part" of the user authentication process. Op. Brief at 13. Similarly, Firstface admits that "'iris recognition' and 'iris authentication' are parts of a whole . . . process—initiating the iris detection component (the camera), detecting/recognizing the iris, comparing the iris to pre-stored iris information, and ultimately authenticating the user." *Id.* at 15. While Firstface does not explain which parts of the process "fingerprint/iris recognition" involves, the claims are express that "fingerprint recognition" is a specific type of the "user identification function" (*i.e.*, of comparing user information) that requires comparing fingerprints. '557 patent at claims 1, 9 ("user identification function includes a fingerprint recognition"); *see also* Section

III.C.1 (discussing "user identification function").  Consistent with the specification, "fingerprint authentication" refers to the "user authentication function" (*i.e.*, authenticating the user as the true user if the user information matches, '557 patent at 7:52) when the user is being authenticated using a fingerprint.  The Court should adopt Apple's proposed constructions of these terms, which clarify that "fingerprint recognition" is the fingerprint-comparing function and that "fingerprint authentication" is the fingerprint-authenticating function within the user authentication process.

### D.     "Simultaneously" (Group 7)

| Term / Phrase | Firstface's Proposal | Apple's and Samsung's Proposal |
|---|---|---|
| "simultaneously"  ('557 patent: claims 1, 9) | "at the same time, without additional steps, and not sequentially" | "at the same time" |

The parties agree that "simultaneously," which appears in the independent claims of the '557 patent, means "at the same time."  Courts and dictionaries alike confirm that "[t]he plain meaning of the word simultaneously is 'in a simultaneous manner: at the same time.'"  *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1324 (Fed. Cir. 2004); Exs. I-L (dictionary definitions); *see also* Nieh Decl. ¶ 41.  The parties all include "at the same time" in their proposed constructions, and the Court should also construe "simultaneously" as "at the same time."

The Court should reject Firstface's attempt to inject two redundant and unnecessary negative limitations—"without additional steps" and "not sequentially"—into the claims.  The Federal Circuit has cautioned against adding negative limitations that "find[] no anchor in the explicit claim language."  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322-23 (Fed. Cir. 2003) (district court erred in adding negative limitation to claim where there was no "express disclaimer or independent lexicography in the written description [of the invention] that would justify adding that negative limitation").  There is no support in the claims, specification, and prosecution history for Firstface's proposed negative limitations.  Departure from the ordinary meaning of "simultaneously" also is unwarranted because Applicants did not express a clear intent to redefine the term "simultaneously," and the added limitations are—by Firstface's

admission—ambiguous.

### 1.     Applicants did not express a clear intent to redefine "simultaneously."

As Firstface concedes, "[a] court will only give a claim term a meaning other than its plain and ordinary meaning '1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution.'"   Op. Brief at 5, 19 (quoting *Thorner v. Sony Computer Entm't America LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)).

With respect to Firstface's proposed "without additional steps" limitation, Firstface does not argue that Applicants disavowed claim scope.  Rather, Firstface argues that Applicants acted as lexicographers by making the following statement to overcome a rejection during prosecution of the '557 patent:

> That is, in view of the specification and the claim language, it is clear that the term "simultaneously" in claims 1 and 13 of the present application means that, when a user just presses the activation button, **both** the user identification function **and** the switching from the inactive state of the display unit to the active state of the display unit <u>are performed, without additional steps</u>.

ECF No. 61-10 at 10.  This comment—the only place the concept of "additional steps" appears in the record—is insufficient to satisfy the exacting requirements for lexicography.  In order to constitute lexicography, the patentee must "clearly express an intent to redefine the term" and "clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning." *Thorner*, 669 F.3d at 1365-66.[4]   The use of the word "means" does not necessarily result in the patentee being deemed to have acted as a lexicographer to limit the scope of a term.

---

[4] *Thorner* did not, as Firstface argues, hold that a patentee necessarily acts as a lexicographer when it uses the word "means."  *See* Op. Brief at 16.  Rather, in providing examples of cases in which the patentee had clearly expressed an intent to redefine a term, *Thorner* quoted from *3M Innovative*.  *See Thorner*, 669 F.3d at 1366.  In *3M Innovative*, the court held that the patentee had acted as its own lexicographer by including in the specification a definitions section with explicit definitions for disputed terms.  *3M Innovative Properties Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1369 (Fed. Cir. 2004).  Here, the patentee did not define "simultaneously" in the specification.

*CSP Techs., Inc. v. Sud-Chemie AG*, No. 4:11-CV-00029-RLY, 2013 WL 2421943, at *12 (S.D. Ind. June 3, 2013), *aff'd*, 643 F. App'x 953 (Fed. Cir. 2016) (despite use of word "means," disputed language was not a lexicographic definition but "example of what [the disputed term] means").

Here, Applicants' statement does not purport to redefine "simultaneously" from its ordinary meaning.  Rather, it paraphrases a broader claim limitation ("the user identification function is performed simultaneously with switching from the inactive state of the display unit to the active state of the display unit by pressing the activation button") and highlights that "both" the user identification function "and" activation "are performed."  In fact, Applicants went on to distinguish the Murakami prior art reference on the basis that, in Murakami, "the activation of the display is performed AFTER the performance of the user identification function"—without any reference to "additional steps."  ECF No. 61-10 at 11.  Because Applicants did not in fact rely on, and never again referred to, the lack of "additional steps" in prosecuting the patent, they did not clearly express an intent to redefine the term "simultaneously."  *Compare Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 679 (Fed. Cir. 2015) (applicant acted as own lexicographer in prosecution because "he later relied on this definition in distinguishing the prior art"); *cf. Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336 (Fed. Cir. 2014), *cert. granted, judgment vacated on other grounds*, 135 S. Ct. 1846 (2015) (refusing to redefine term of art where nothing in specification or prosecution history showed attempt to distinguish over prior art based on alternative definition implied in specification).

With respect to its other proposed negative limitation, "not sequentially," Firstface does not argue that Applicants acted as lexicographers or disavowed claim scope.  In fact, the word "sequentially" does not appear anywhere in the '557 patent claims, the specification, or the prosecution history.  Firstface suggests that the prosecution history nevertheless justifies adding the "not sequentially" limitation because Applicants argued that Murakami discloses that data is displayed "*only on the condition* that user's identity is authenticated."  Op. Brief at 17 (citing ECF No. 61-10 at 11).  This statement about conditions fails to support a "not sequentially" limitation, and additionally introduces ambiguity because it does not distinguish between

conditional sequential performance and unconditional sequential performance. In fact, Applicants went on to explain that the conditional nature of Murakami means that it does not disclose the "switching from the inactive state of the display unit to the active state of the display unit by pressing the activation button" limitation: Murakami "does not display the data" at all "[i]f the user's identity is not authenticated." ECF No. 61-10 at 11. Applicants' statement regarding conditions says nothing about what "simultaneously" means. Simply put, there is no intrinsic evidentiary support for the "not sequentially" limitation either.

### 2. Firstface's added negative limitations are redundant and ambiguous.

The Court also should reject Firstface's invitation to read its proposed negative limitations into the claims for the additional reason that they are ambiguous. *See Rambus Inc. v. Hynix Semiconductor Inc.*, No. C-05-00334 RMW, 2008 WL 2955125, at \*11 (N.D. Cal. July 25, 2008) (refusing to "introduce further ambiguity" into claims). In particular, it is unclear what "steps" refers to, or what steps are "additional" and excluded from the scope of the claims. Nieh Decl. ¶ 43. Firstface itself concedes there may be "disputes about the meaning of 'without additional steps.'" Op. Brief at 17.

It also is unclear what "not sequentially" adds to the construction. Firstface argues that "'**without additional steps**' means that the two steps—activating the display and performing fingerprint recognition—**cannot occur sequentially**, but must occur **at the same time** (and one is not **dependent** on the other)." Op. Brief at 17 (emphasis added). This suggests that Firstface believes that "without additional steps" and "not sequentially" each means the same thing as "at the same time." Thus, at best, Firstface's proposed negative limitations are redundant.

Further, Firstface fails to explain the source of the "not dependent on the other" phrase in its interpretation of its own construction, what that phrase has to do with any other element of its construction, or the implications (if any) of that phrase to the extent it is even relevant to Firstface's proposed construction. The Court should reject Firstface's ambiguous and confusing construction and adopt Defendants' construction that "simultaneously" means "at the same time."

### E.     Long Press Terms (Groups 8 and 9)

| Term / Phrase | Firstface's Proposal | Apple's Proposal |
|---|---|---|
| "in response to the one-time pressing of the activation button, the first function is performed . . . , and . . . the second function is performed when the one-time pressing is for a long time, longer than a reference time period" ('373 patent: claims 1, 11) | plain and ordinary meaning | "in response to the one-time pressing of the activation button, the first function is performed . . . , and . . . the second function is performed instead when the one-time pressing is for a long time, longer than a reference time period" |
| "perform at least one function other than the fingerprint authentication function . . . when the one-time pressing is for a long time, longer than a reference time period" ('419 patent: claims 1, 3, 7, 10, 12, 17) | plain and ordinary meaning | "perform at least one function instead of the fingerprint authentication function . . . when the onetime pressing is for a long time, longer than a reference time period" |

The parties dispute whether the long press limitations, found in each of the asserted independent claims of the '373 and '419 patents, allow both the first function and the second function to be performed upon a long press, as Firstface argues—despite failing to offer a construction—or require the second function to be performed **instead of** the first function, as Apple contends.[5]

The plain meaning of the claim language is that the second function is performed **instead of** the first function (in this example, fingerprint authentication) on a long press, not **in addition to** the first function.   For example, claim 1 of the '419 patent states:

> [1] wherein upon one-time pressing of the activation button while the touch screen display is turned off, the terminal is configured to turn on the touch screen display and perform a **fingerprint authentication** function in addition to turning on the touch screen display . . . and . . .
> [2] wherein the terminal is further configured to perform at least one **function other than the fingerprint authentication function** in addition to turning on the touch screen display in response to the one-time pressing of the activation button when the one-time pressing is for long time longer than a reference time period. . . .

---

[5] Because Firstface does not assert the '373 and '419 patents against Samsung, Samsung takes no position on the long press limitations.

'419 patent at claim 1; *see also id.* at claims 3, 7, 10, 12, 17 (similar limitations).   Dictionary definitions confirm the plain meaning of "other than" is "apart from."   Ex. M, *Oxford English Reference Dictionary*, at 1029-1030.

To illustrate, the plain reading of "If input X occurs, do A in addition to turning on the display; if input Y occurs, do B in addition to turning on the display" is that A and B are alternatives.   A reading that **both** A and B can occur upon input Y would render "in addition to turning on the display" superfluous when restated in connection with input Y.   If both fingerprint authentication and the second alternative long-press function were intended to occur, one would state more simply:   "Upon a one-time press, perform fingerprint authentication in addition to turning on the display; if the press is for a long time, also perform an additional function."   There would be no need to restate turning on the display.   Apple's reading gives all claim language meaning, as the claim is setting up two alternatives:   "On a short press, perform function one and turn on the display; on a long press, perform function two and turn on the display."   Because each claim element is material to defining the protected invention, it is improper to construe a patent claim so that express claim limitations or elements are rendered superfluous, and, therefore, meaningless.   *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006).

Firstface does not dispute that the '373 patent should be construed consistently.   *See August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1284 (Fed. Cir. 2011).   And the '373 patent claims require the same result.   They require the first and second functions to be selected from the set of fingerprint authentication, activating a camera, playing music, and a hands-free function. '373 patent at claim 1, certificate of correction.   If the user sets the first function to be the hands-free function and the second function to be playing music, it would also lead to nonsensical results to require that both of those functions be activated upon a long press.   Devices typically pause music when initiating voice command functionality, as it is difficult for the device to decipher between voice commands and lyrics.   Nieh Decl. ¶ 47.   Apple's construction arises directly from the plain meaning of the claims, so it need not "justify . . . a departure from the plain meaning of the claim language" or show that the Applicants "disavowed the possibility that both functions could be performed upon a long press of the activation button."   Op. Brief at 19.

The specification of both patents further reinforces that the functions are alternatives.  For example, the specification states that the function "**differs** according to the number of presses or a press time of the activation button 120." '373 and '419 patents at 4:57-61 (emphasis added).  The only example in the specification regarding the use of a long press also supports Apple's construction.  The specification discloses a "location information transmission unit 530" that can (a) transmit location information and an urgent message to a "protection authority," such as a police station, when the activation button is pressed for a short time and (b) transmit "only the location information" to a "protector" when the activation button is pressed for a long time. *Id.* at 8:41-46; 51-55.  Those two functions are alternatives.  Nieh Decl. ¶ 48.  The specification also discloses an example involving multiple presses.  It states that location information can be transmitted (a) "to the police station along with the urgent message when the activation button 120 is pressed once" or (b) "to a fire station along with the urgent message when the activation button 120 is pressed three times." '373 and '419 patents at 8:55-61.  Again, these functions are alternatives.  Nieh Decl. ¶ 48. The specification nowhere discloses performing both functions upon a long press (or multiple presses), and, in these examples, it would be nonsensical to do so.  Firstface appears to concede that the claims do not **require** that both the first and second functions be performed upon a long press.  But there is no justification to even **allow** it in view of the claims and the specification. *See Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1139-40 (Fed. Cir. 2003) (construing claim as limited to single configuration for introducing genes because specification described only that configuration); *Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1382-83 (Fed. Cir. 1999) (limiting term "frame" to character-based protocol where "only system that is described and enabled in the '669 specification and drawings uses a character-based protocol"); *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1581 (Fed. Cir. 1997) (holding "passage" could not encompass smooth-walled cylindrical structure where specification described only non-smooth or conical passages).  Once again, if the Court construes the claims to allow both functions to be performed on a long press, the long press terms would lack written description because the specification fails to describe both the functions being performed in response to a long press in sufficient detail. *See In re Downing*, 2018 WL 6436437, at *5.

Finally, during prosecution, the Examiner expressed his understanding consistent with Apple's:  the '373 patent's final claims require either "the finger authentication [a first function] to occur while the lock screen is displayed **or** activating the camera [a second function] while the lock screen is displayed."  Ex. B, '373 Patent Prosecution History, Notice of Allowability, dated February 1, 2017, at 5 (emphasis added).  His use of the word "or" can only mean that the two functions are alternatives.

Firstface cannot, by making the claim language more ambiguous and confusing, **broaden** the scope of its invention from what it initially contemplated to capture a reading inconsistent with the patent claims, specification, and file history.

## IV.   CONCLUSION

The Court should reject Firstface's proposed constructions.  Its "plain and ordinary meaning" non-constructions of "off/on," the fingerprint recognition/authentication terms, and the "long press" terms provide no guidance to the jury and fail to address fundamental disputes regarding the scope of the terms that must be resolved by the Court.  Firstface's constructions of "activation button," "off/inactive" state, and "simultaneously" seek to read into the claims unnecessary, confusing, and unsupported language.  The Court should adopt Defendants' proposed constructions, which are consistent with intrinsic and extrinsic evidence, provide guidance to the jury, and resolve disputes regarding the claim terms' scope.

1    Dated: March 1, 2019                    Respectfully submitted,

2

3                                       By:  /s/ Stefani E. Shanberg
                                             STEFANI E. SHANBERG
4                                            NATHAN B. SABRI
                                             BARBARA N. BARATH
5                                            **MORRISON & FOERSTER** LLP
                                             425 Market Street
6                                            San Francisco, CA  94105-2482
                                             Telephone:  415.268.7000
7                                            Facsimile:  415.268.7522

8                                            Attorneys for Defendant
                                             APPLE INC.
9

10

11   Dated: March 1, 2019                    By:  /s/ Aaron Wainscoat
                                             MARK D. FOWLER
12                                           AARON WAINSCOAT
                                             CLAYTON THOMPSON
13                                           ERIK R. FUEHRER
                                             JONATHAN HICKS
14                                           **DLA PIPER LLP (US)**
                                             2000 University Avenue
15                                           East Palo Alto, CA  94303-2214
                                             Telephone:  650.833.2000
16                                           Facsimile:  650.833.2001

17                                           Attorneys for Defendants
                                             SAMSUNG ELECTRONICS CO., LTD.
18                                           AND SAMSUNG ELECTRONICS
                                             AMERICA, INC.
19

20

21

22

23

24

25

26

27

28

1

**L.R. 5-1(i)(3) ATTESTATION**

2

Pursuant to L.R. 5-1(i)(3), I attest that Aaron Wainscoat, on whose behalf the filing is

3

submitted, concurs in the filing's content and has authorized the filing.

4

5

Dated: March 1, 2019                                    Respectfully submitted,

6

7

By:   */s/ Stefani E. Shanberg*

8

STEFANI E. SHANBERG
NATHAN B. SABRI

9

BARBARA N. BARATH
**MORRISON & FOERSTER LLP**

10

425 Market Street
San Francisco, CA  94105-2482

11

Telephone:  415.268.7000
Facsimile:  415.268.7522

12

13

Attorneys for Defendant
APPLE INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28